JAMES KELLING and Others v. H. P. EDWARDS and Another.[1]

January 19, 1912.

Nos. 17,336—(183).

**Bid for construction of county ditch — security for bid.**

Requirements of Laws 1905, c. 230, § 14, as to the filing of a certified check for ten per cent. of the amount of the bid with a bid for the construction of a drainage ditch, *held* sufficiently complied with.

**Award of contract — lowest responsible bidder.**

In awarding a contract under this statute, the county auditor, in determining who is the "lowest responsible bidder," is not limited to an inquiry as to financial responsibility, but may, in the exercise of the discretion vested in him, inquire also as to the fitness and ability of the bidders to do and perform the particular work.

**Same — reasons for award sufficient.**

The contract awarded in this case, though not given to the lowest bidder, was not invalid as in violation of the statute; the reasons assigned by the auditor for such award being sufficient to justify his action.

**Reduction of bid after award.**

The fact that the bid was reduced after the award had been made and before the contract had been executed did not affect the validity of the award or the contract executed pursuant thereto.

**Refusal to enjoin — no abuse of discretion.**

The trial court did not abuse its discretion in refusing a temporary injunction restraining the performance of the contract so awarded.

Action in the district court for Martin county by five landowners over whose land the proposed ditch would be constructed, in their own behalf and for the benefit of all other persons, landowners, whose lands would be affected by, and assessed for, the construction of the ditch, against H. P. Edwards, as county auditor of that county, and as an individual, and L. P. Axelson. The complaint prayed for a

[1]Reported in 134 N. W. 221.

[Note] Remedy of lowest bidder for refusal of authorities to award contract to him, see note in 30 L.R.A. (N.S.) 126.

cancelation of the contract executed by the county auditor and by defendant Axelson for the construction of county ditch No. 24; for an injunction against Axelson to restrain the performance of the contract; for an injunction against Edwards to restrain filing with the register of deeds any statement, statutory or otherwise, showing the cost of the ditch or the amount to be charged against plaintiffs' lands, or from performing the contract; or from placing the amount of assessments or of benefits, or of cost of the ditch, upon the tax lists of the county; or from taking any further steps in the ditch proceedings until the auditor should readvertise for bids for its construction, according to law.

Defendant Edwards answered separately. Among other matters, his answer alleged defendant Axelson offered and agreed to use only first quality hard burned clay tile; that the other bidders named in the opinion offered to use cement tile only; that in his advertisement the answering defendant expressly reserved the right to reject any and all bids offered. His answer set up that the three other bidders named in the opinion had been either contractors or subcontractors on other ditches built by the county, and had been in default in the performance of their contracts; that Axelson had previously executed a similar contract with the county satisfactorily and without default; that he had been county auditor for eight years continuously, during which time a large number of public ditches had been built, and he had found the cost of inspection of ditches constructed of cement fully ten per cent. greater than when they were constructed of clay tile; that he learned from experience and from competent civil engineers there is no known method of satisfactorily inspecting cement tile and determining whether they are of poor quality; that in his opinion the cost of supervision and inspection, if the ditch were constructed of cement tile, would be $1,000 greater than if constructed of clay tile; that in the exercise of his best judgment and discretion he determined that the three other bidders named in the opinion were not, nor were either of them, the lowest responsible bidder, and that none of their bids was lower than that of Axelson, and Axelson was the lowest responsible bidder taking into account the cost of inspection and other matters properly to be considered;

that therefore he accepted Axelson's bid and awarded him the contract.

Defendant Axelson answered separately. The substance of his answer will be found in the opinion.

The plaintiffs obtained an order directing defendants to show cause why they should not be enjoined from carrying the contract into effect. On the return day the matter was submitted, upon the pleadings and affidavits and counter-affidavits, to Quinn, J., who made findings and denied the temporary injunction asked for. From the order denying the injunction, plaintiffs appealed. Affirmed.

*Knox & Faber,* for appellants.

*Dean & Palmer,* for respondents.

PHILIP E. BROWN, J.

This is an appeal by the plaintiffs from an order of the district court of Martin county, denying a motion for a temporary injunction in an action to set aside as null and void and to restrain the further performance and carrying into effect of a contract for the construction of a certain drainage ditch designated as ditch No. 24 of the said county.

The plaintiffs are landowners whose lands will be affected by and assessed for the costs of the construction of the said ditch. The defendant Edwards is the auditor of the said county, and the defendant Axelson is the contractor to whom the defendant Edwards awarded the contract against the further performance of which the injunction is sought.

The complaint, after alleging the legal establishment of the said ditch pursuant to Laws 1905, p. 303, c. 230 (R. L. Supp. 1909, §§ 2651—44 to 2651—106) and acts amendatory thereof, and the subsequent proceedings up to the time of the filing of bids and the award thereon, all of which are alleged to have been regular, proceeds to attack the award and the contract subsequently entered into between the two defendants for the construction of the said ditch—the grounds of such attack being (1) that the defendant Axelson's bid was not accompanied by a certified check, payable to the auditor, for ten per cent. of the amount of his bid, as required by Laws 1905, p. 318,

c. 230, § 14 (R. L. Supp. 1909, § 2651—57); (2) that the said Axelson was not the lowest responsible bidder; and (3) that after the award had been made at the public letting, the auditor, without notice and without any reletting of the job, secretly and privately entered into a contract with the said Axelson for the construction of the said ditch, and that this contract is Axelson's only authority for doing the work in question.

The following facts are either conceded or established:

On June 3, 1911, the defendant Edwards, acting in his capacity as auditor of Martin county, advertised for bids for the construction of the said ditch No. 24, stating in such advertisement that on June 30, 1911, he would receive bids for the construction of such ditch and would let the contract therefor to the lowest responsible bidder, the work to be done and completed according to the plans and specifications of the engineer. These plans and specifications in terms authorized the use of either clay or cement tile. On the day specified by such advertisement a number of bids were filed, the four lower being as follows: L. P. Axelson, clay tile to be used, $21,-520; Ceylon Cement Tile Company, cement tile to be used, $20,-881.61; Sherburn Cement Drain Tile Company, cement tile to be used, $20,860; Fairmont Cement Stone Manufacturing Company, cement tile to be used, $20,690. All of these bids were regular in form, and, with the exception of Axelson's, each was accompanied by a certified check upon a solvent bank, payable to the auditor, for ten per cent. of the amount of the bid; the highest of these four bids being $1,479.50 less than the estimated total cost of the work.

Axelson's bid was accompanied by two checks, one for $1,000 and the other for $2,000; both being certified by a solvent bank, but being payable to L. P. Axelson, and by him indorsed to H. P. Edwards without the latter's official designation as auditor of Martin county, and the $1,000 check not being signed by the drawer thereof, which omission, however, was subsequently attempted to be cured by Axelson's signature of such check, when his attention was called to the defect by the auditor.

Upon these bids the auditor, on June 30, 1911, awarded the con-

tract to Axelson for the sum of $21,520; such award being made verbally in the presence of the other bidders. But thereafter, on or before the day on which the contract was executed, Axelson presented to the auditor a writing as follows:

"Fairmont, July, 1911.

"I hereby modify and change the bid first submitted by me for the construction of county ditch No. 24 of Martin county, Minnesota, and offer to construct the same and furnish all material in accordance with the plans and specifications for the sum of $20,860, using No. 1 hard burned tile, except 22 in. and 24 salt glazed tile.

"L. P. Axelson."

And on July 11, 1911, Edwards, in his capacity as auditor of the said county, entered into a formal written contract with Axelson, which, after reciting the award of the contract to him upon his bid of $21,520, and also a relinquishment by him of $660 of the amount of such bid, proceeded to express the agreement of the parties in all other respects in due form and according to law. On July 24, 1911, Axelson filed with the auditor a good and sufficient bond for the performance of his contract, which bond was duly approved. Prior to this, however, Axelson had already done a substantial portion of the work, and at the time of the service of the restraining order upon him, July 29, 1911, he had purchased all the tile and other materials for the entire work, and had a large portion thereof on the ground.

There was no allegation of fraud in the making of the award to and the contract with Axelson, nor was it claimed on the hearing below that the auditor acted in bad faith; but throughout the whole proceeding below his entire honesty of purpose and his thorough integrity were conceded.

The issues raised by these facts are all embodied in the plaintiff's contentions as we have stated them, and may be considered in the same order.

1. Were the checks filed by Axelson with his bid valid; and, if so, was there a sufficient compliance with the statute in the matter of form? There was no objection to the validity of the $2,000 check, and we hold that the $1,000 check was also valid, to such extent, at least, that Axelson, the drawer, had authority to affix his signature

thereto, and that after such signature was so affixed the check, being already certified, was binding upon the bank. Whether Axelson's signature was affixed before or immediately after the award of the contract is immaterial. Nor did it matter that these checks were payable to Axelson, the drawer, and by him indorsed to Edwards, instead of being made payable directly to him, and that they were not indorsed to Edwards in his official capacity. They were filed with the bid, and were indorsed to the man who was in fact the auditor, and this was sufficient. Moreover, the purpose of the checks was merely to secure the proper execution of the contract pursuant to the bid and award, and their office was fulfilled when such contract was executed.

2. Did the auditor let the contract to the lowest responsible bidder; or rather, was he justified in concluding that Axelson was such bidder?

Many statutes and municipal charters here and in other states contain this or some similar requirement with reference to the letting of contracts for public works, and the conceded rule is that such requirement is mandatory, and unless it is complied with the contract will be illegal. But if the administrative officers or boards were held to act in a purely administrative capacity in awarding public contracts, they would be rendered powerless to protect the public from fraud and imposition; and hence it is held, and we so hold, that the determination of the responsibility of bidders calls for the exercise of deliberation and discretion of a judicial nature. Inge v. Board, 135 Ala. 187, 33 South. 678, 93 Am. St. 20; Philadelphia v. Pemberton, 208 Pa. St. 214, 57 Atl. 516; Interstate v. Philadelphia, 164 Pa. St. 477, 30 Atl. 383; McGovern v. Board, 57 N. J. L. 580, 31 Atl. 613.

It is also well settled that the exercise of this discretion by such officers or boards will not be interfered with by the courts, except for fraud or abuse. People v. Kent, 160 Ill. 655, 43 N. E. 760; City v. Dumars, 33 Colo. 94, 80 Pac. 114; Findley v. City, 82 Pa. St. 351; Louisville v. Gast (Ky.) 115 S. W. 761; Stern v. City, 60 Wash. 325, 111 Pac. 231; Schwitzer v. Board, 79 N. J. L. 342,

75 Atl. 447. See also 28 Cyc. 1031; 20 Am. & Eng. Enc. (2d Ed.) 1169.

This discretion, however, is not arbitrary or unlimited, but must be exercised in the interest of the public (Inge v. Board, supra) ; and where a bid is rejected as being made by an irresponsible bidder, there must be some fact tending to show that the bid is not that of a responsible bidder (McGovern v. Board, 57 N. J. L. 580, 31 Atl. 613). This limitation upon the discretion to determine responsibility is well stated by Mr. Freeman in the note to State v. Rickards, 16 Mont. 145, 40 Pac. 210, 28 L.R.A. 298, as reported in 50 Am. St. 476, 490, as follows:

"The determination of who is the lowest bidder, with the qualification of responsibility, rests, not in the exercise of an arbitrary, unlimited discretion of the officer or board awarding the contract, but upon the exercise of a bona fide judgment, based upon facts tending reasonably to the support of such determination."

Such being the discretion of the auditor in the matter of determining the responsibility of bidders, the next question is as to the elements of responsibility within the purview of the statute under consideration. Counsel for the plaintiffs insist that the statute contemplates only that the bidders shall be financially responsible; but we cannot so hold, for it is well settled that the word "responsible," as used in such statutes, imports not only financial responsibility, but also integrity, skill, and ability, and the likelihood of the bidder's doing faithful and satisfactory work. Reuting v. City, 175 Pa. St. 512, 34 Atl. 916; Hannan v. Board, 25 Okl. 372, 107 Pac. 646, 30 L.R.A. (N.S.) 214; People v. Kent, supra; Philadelphia v. Pemberton, supra; Interstate v. Philadelphia, supra; Com. v. Mitchell, 82 Pa. St. 343; Hoole v. Kinkead, 16 Nev. 217; State v. Rickards, supra. See also 28 Cyc. 1032; 20 Am. & Eng. Enc. (2d Ed.) 1170.

In Inge v. Board, supra, the rule is stated as follows: "In deciding upon the responsibility of bidders, it is the duty of the board or officers, not only to take into consideration the pecuniary ability of bidders to perform the contract, but also to ascertain which ones, in point of skill, ability, and integrity, would be most likely to do faithful, conscientious work, and to fulfil the terms of the contract." It

is also held that the mere fact that the contract is not let to the lowest bidder is not alone sufficient to overcome the presumption of regularity of the officer's action. Gilmore v. City, 131 N. Y. 26, 29 N. E. 841; Peckham v. City, 138 Cal. 242, 71 Pac. 169.

Can it be said, then, in the light of the foregoing principles, that the auditor did not let the contract involved in this case to the lowest responsible bidder? In other words, was there evidence reasonably tending to support his rejection of the three lowest bids as being made by irresponsible bidders? For if they were irresponsible, Axelson was manifestly the lowest responsible bidder; his responsibility being abundantly shown by the defendants' sworn pleadings and by the defendant Edwards' affidavit, and not being questioned by the plaintiffs. In both his answer and his affidavit the defendant Edwards says that he considered Axelson to be the lowest responsible bidder and awarded the contract to him as such. He says, further, that all three of the rejected bidders either had been or were, at the time of the award complained of, in default in time upon other ditch contracts with the county, while the defendant Axelson had duly, expeditiously, and satisfactorily completed a former ditch contract with the county.

It appears, furthermore, that Edwards had been auditor of Martin county for more than eight years last past, and during that time had had much experience in letting ditch contracts, thus being in a peculiarly advantageous position to determine the matter before him. In an affidavit submitted by the plaintiffs on the hearing below, an effort was made to excuse the defaults of one of the rejected bidders, the fact that all three of them either had been, or were at the time of the award, in default in time as charged by Edwards being admitted; but on the whole case we cannot, in the absence of any claim of fraud or collusion, and after the auditor's action in the matter has been approved by the trial court, say that there was no rational basis for his rejection of these bids as being made by irresponsible bidders. Promptness is an element of responsibility of bidders for contracts for public works. Reuting v. City, supra; Hoole v. Kinkead, supra; Com. v. Mitchell, supra. And the auditor had the right

to make use of his past experience with these rejected bidders in determining whether they were responsible.

It is true that the irresponsibility of the bidders was not his sole reason for rejecting these bids, for he admits that he took into consideration the relative cost of inspecting clay tile, called for by Axelson's bid, and cement tile, called for by the rejected bids, and also the relative general merits of the two kinds of tile, claiming that clay tile cost much less to inspect and was generally superior to cement tile; but we cannot on this appeal undertake to apportion his reasons for his action, and say that he abused his discretion because one of such reasons must be held unavailable to him. He certainly had no right to take into consideration the alleged superiority of clay tile, either in the matter of inspection or otherwise, in determining the amount of the bids.

The statute makes it his duty to determine the lowest responsible bidder; but Laws 1905, p. 308, c. 230, § 4 (R. L. Supp. 1909, § 2651 –47), provides that the engineer shall have power to specify the kinds of tile to be used, and Laws 1905, p. 318, c. 230, § 14 (R. L. Supp. 1909, § 2651–57), requires the auditor to let the contract with reference to the engineer's specifications. It does not follow, however, that his determination with reference to the matter of responsibility of the bidders is unfounded, and having determined, upon, as we hold, sufficient evidence to invoke the ex..cise of his discretion in the matter, that the Ceylon, Fairmont, and Sherburn Companies were not responsible, it was his duty to award the contract to Axelson.

The plaintiffs' counsel insist that, even if the auditor had any discretion in determining the lowest responsible bidder, he had no right to reject bids on account of the irresponsibility of the bidders without giving them an opportunity to be heard. To support this contention they cite Faist v. Mayor, 72 N. J. L. 361, 60 Atl. 1120. We are referred to no other case so holding, and clearly there would be practical difficulties in applying such a rule. In the case before us it does not appear that any hearing was requested, and there is neither allegation nor proof of any lack of a hearing. Under these circumstances the contention cannot be sustained.

3. Did the auditor, after the public award on June 30, 1911, pri-

vately and secretly enter into a new and different contract with the defendant Axelson for the construction of the said ditch? If he did, the contract is invalid. Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L.R.A. 448. He clearly had no right, without a public reletting, to accept any material change or modification of Axelson's bid as the basis of the final award of the contract; but, after the award had been made, a change or alteration in the nature of a relinquishment of a portion of the price specified by the bid would not affect the contract based on such award. Whether, therefore, the award was affected by the so-called modified bid, depends entirely upon whether the latter was a new and materially different bid, upon which the final award was made, or whether it was a mere relinquishment upon the price specified in the bid upon which the contract purports to be based. The trial court makes no express finding in this regard, but its holding upon the application for the temporary injunction necessarily imports such a finding, and it does so find argumentatively in the opinion which is spread upon the record.

The defendant Edwards, in both his sworn answer and in his affidavit, alleges that the contract had been awarded to Axelson on his bid of $21,520 before the so-called modified bid was filed with him, and that such bid was intended as and was merely a credit upon the price already fixed by the bid proper and the award thereon; and these allegations are not denied, except in the plaintiffs' reply to the defendant Edwards' answer, after admission of ignorance on the matter denied. Edwards further declares that he had no knowledge of any proposed or intended reduction by Axelson at the time of the acceptance of his bid proper, and that Axelson's reason, assigned at or just prior to the filing of the so-called modified bid, for making the reduction, was that he had heard of some dissatisfaction among the landowners on account of the nominally lowest bids having been rejected.

All of Edwards' allegations and testimony on this matter are corroborated by Axelson in his answer, which was not denied, and Axelson specifically alleges that his sole reason for making the reduction was the dissatisfaction of the landowners, and that he made it for

their benefit.   In addition to all this, the contract recites the whole transaction, and refers to and treats the so-called modified bid as a credit upon the contract price fixed by the bid proper.   Moreover, it was conceded on oral argument that the change in the bid did not materially vary the terms thereof, except in the matter of price.

In the face of this evidence, against which nothing whatever was offered by the plaintiffs, other than by inference from the mere form in which the deduction or credit was tendered, we must hold that this so-called modified bid was in fact a mere credit upon the contract price, and that the contract was based upon the bid proper. Axelson became entitled to the contract immediately upon the award, provided, of course, that such award was at that time valid.   Baird v. Mayor, 83 N. Y. 254; Campbell v. City, 10 Weekly Notes Cas. (Pa.) 221; Safety Insulated Wire Co. v. Mayor, 66 Fed. 140, 13 C. C. A. 375.   If that award had been invalid, it would not have been helped by the subsequent change in the price; but, being valid, it was not invalidated by this deduction or credit offered by Axelson and accepted by Edwards.   In no event could the plaintiffs have been prejudiced by this reduction of the contract price.

4. Some other questions were raised and considered, but we do not deem it necessary to discuss them, further than to say that on the whole case we do not think that the trial court abused its discretion in denying the plaintiffs' motion for a temporary injunction.

The order of the trial court is therefore affirmed.