Filed 11/18/22

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| JANNICE FRAZIER et al., | ) | No. BS 175984 |
| Petitioners, | ) | Inglewood Trial Court |
| v. | ) | No. 22IWUD00359 |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ) | |
| Respondent; | ) | |
| TRUSSE NORRIS et al., | ) | |
| Real Parties in Interest. | ) | **OPINION** |

ORIGINAL PROCEEDINGS in mandate. Ronald F. Frank, Judge. Petition denied.

Alisa Randell and Public Counsel, for Petitioners.

Leo L. Ashley III and Law Office of Leo L. Ashley III, for Real Parties in Interest.

\* \* \*

1

This petition for a writ of mandate was filed by defendants Jannice Frazier and Tarron Williams in a failure to pay rent unlawful detainer action after the trial court denied their motion for summary judgment. The issue raised in the motion for summary judgment and before this court is whether defendants were entitled to summary judgment as a matter of law when it was undisputed that plaintiffs failed to comply with the provisions of Rent Stabilization and Tenant Protections ordinance, enacted as County of Los Angeles Ordinance No. 2021-0040 ("the Ordinance"), by timely submitting a copy of the three-day notice to pay rent or quit to the Los Angeles County Department of Consumer and Business Affairs ("the Department").[1] As explained below, we deny the petition.

BACKGROUND

Plaintiffs and real parties in interest Trusse Norris and Mary Norris own a residence located within an unincorporated area in the County of Los Angeles. On April 20, 2022, plaintiffs commenced this action in unlawful detainer to recover possession of the subject property. The complaint alleged Frazier occupied the premises pursuant to a written lease agreement executed on or about June 8, 2021, in which Frazier agreed to pay rent of $3,300 on the first day of each month. The term of the agreement expired on December 31, 2021, and afterwards defendants' occupancy converted into a month-to-month tenancy at will. On April 11, 2022, plaintiff served defendants with a three-day notice seeking payment of past-due rent for that month, or relinquishment of possession. As of April 14, 2022, defendants failed to either pay the rent or vacate the premises.

Defendants' answer, inter alia, maintained plaintiffs failed to comply with section 8.52.090, subdivision (B)(4) of the Ordinance by timely submitting a copy of the three-day notice to the Department and this defect defeated plaintiffs' claim of right to possession.

Defendants moved for summary judgment on the same ground—plaintiffs could not prevail in the action as a matter of law due to their noncompliance with section 8.52.090, subdivision (B)(4). The motion was supported by a declaration from the Department's

---

[1]When terminating a tenancy for cause, a landlord must submit to the Department, within five days after service of the notice of termination on the tenant, a true copy of the notice and proof of such service signed under penalty of perjury. (L.A. County Code, ch. 8.52, § 8.52.090, subd. (B)(4).)

Further code references are to the Los Angeles County Code unless otherwise indicated.

2

custodian of records, which stated that the Department had no record of receipt of the April 11, 2022 served three-day notice.

Plaintiffs' opposition to the motion was premised upon two legal arguments. First, plaintiffs substantially complied with the Ordinance by submitting a notice to the Department by email on May 23, 2022—approximately one month after the complaint was filed. Second, any failure by plaintiffs to comply with section 8.52.090 was not an element of their prima facie case and the Ordinance does not specify that a violation serves as a defense to an action for possession.

The trial court denied defendants' motion for summary judgment following a hearing. The court explained its rationale as follows: "the thrust of the ordinance is that the County is providing an enforcement mechanism for the Department to be able to enforce any violations of the rent control ordinance. And the purpose, as far as the court can determine, of requiring the notice to quit to be sent to the Department is so the Department can decide if it wants to intervene, if there are other tenants who have similar circumstances, or to otherwise become involved with this enforcement mechanism.

"The Department has not done so in the months since the notice to quit and proof of service were sent to them. Further, unlike the COVID Tenant Protection Resolution . . . from the county, . . . there is no affirmative defense provision in the rent control ordinance like there is in the COVID resolution.

"Given the number of times that the Board of Supervisors has looked at the issue of tenant protections in LA County over the course of the last two years and the over dozen times that it amended the COVID tenant protection resolution, and the one time that it amended the rent control ordinance, if somebody thought that there was something missing, they could have gone before the Board of Supervisors and said, you ought to put in an affirmative defense provision like the one that you have in the COVID Tenant Protection resolution.

"Not being there, and with the [ar]ticulated remedies and enforcement provisions that I see in the rent control ordinance, it's the court's view that the county did not intend for a delay in providing the County with the notice to the Department provision to bar an otherwise proper failure to pay eviction."

Defendants challenge the order denying summary judgment in this timely petition for writ of mandate. (Code Civ. Proc., § 437c, subd. (m)(1); *West Shield Investigations & Security Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 946.)[2]

DISCUSSION

It is undisputed that plaintiffs did not submit the notice to the Department within the deadline imposed by section 8.52.090, subdivision (B)(4). What is disputed is the consequence of this noncompliance. This is an issue of first impression.

Defendants contend the notice requirement was a prerequisite to plaintiffs' commencement of the unlawful detainer action or, alternatively, it was an affirmative defense thereto. It is plaintiffs' position the Ordinance does not prohibit the termination of a tenancy based upon a landlord's failure to timely submit a copy of the notice to the Department. Based on the plain language of the Ordinance in addition to the relevant legislative history, we find defendants were not entitled to summary judgment.

Summary judgment may be granted only if there is no question of material fact and the issues raised in the papers may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) A defendant seeking summary judgment bears the burden of establishing there is a complete defense to the cause of action. (*Id*. at p. 849.) A writ of mandate will issue where the court's denial of a motion for summary judgment will result in a trial on non-actionable claims. (*West Shield Investigations & Security Consultants v. Superior Court*, *supra*, 82 Cal.App.4th at p. 946.) An order denying summary judgment involving only questions of law is subject to de novo review. (*Ibid*.)

Interpretation of a municipal ordinance is reviewed under the same standards applicable to statutory construction. (*Chun v. Del Cid* (2019) 34 Cal.App.5th 806, 815.) "'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to

---

[2]We granted a temporary stay of the trial court proceedings and issued an alternative writ of mandate directing the court to vacate its order, or to show cause why a peremptory writ of mandate should not issue. After the trial court declined to vacate its order, plaintiffs filed a return and defendants filed a reply, and the cause was taken under submission after both parties presented oral argument.

4

effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'  [Citation.]"  (*Bruns v. E-Commerce Exchange, Inc*. (2011) 51 Cal.4th 717, 724.)  Courts also look to legislation upon the same subject, which "can serve as important guides, because our search for the statute's meaning is not merely an abstract exercise in semantics." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1084.)

A cause of action for unlawful detainer is a summary proceeding designed to provide an expeditious remedy to recover possession of real property.  (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805.)  The standard elements of an unlawful detainer action for nonpayment of rent are (1) the tenant is in possession of the premises, (2) the tenant is in default for nonpayment of rent, (3) the tenant has been properly served with written notice to pay rent or quit of no less than three days, and (4) the tenant's default continues after the three-day notice period has elapsed.  (Code Civ. Proc., § 1161, subd. (2); *Bawa v. Terhune* (2019) 33 Cal.App.5th Supp. 1, 5-6.)  Due to the summary nature of the proceeding, strict compliance with the statutory requirements is a prerequisite to a landlord's recovery of possession.  (*Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474, 480.)

A municipality may, under its general police powers (Cal. Const., art. XI, §7), enact additional regulations to the grounds for eviction to the extent it is not preempted by state law.[3]

_____

[3]Under *Birkenfeld* and its progeny, a municipality may add or limit a *substantive* ground for eviction but may not enact a *procedural* barrier that interferes with the summary procedure for a landlord to recover possession of property pursuant to Code of Civil Procedure section 1161 et seq. (*Foster v. Britton* (2015) 242 Cal.App.4th 920, 929-933.)  The distinction between a procedural and substantive law in this context has been described as "elusive" and "'"'shadowy and difficult to draw' in practice"'" (*San Francisco Apartment Assn. v. City and County of San Francisco* (2018) 20 Cal.App.5th 510, 516 & fn. 2), but there is a strong presumption against preemption (*Rental Housing Assn.*, *supra*, 171 Cal.App.4th at p. 752).

5

(Civ. Code, § 1954.53, subd. (e); *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 149 (*Birkenfeld*).) Compliance with a local rent control ordinance may be considered an element of a landlord's prima facie case essential to prevail in an unlawful detainer, or an affirmative defense to such an action, depending on its language. (*Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 756 (*Rental Housing Assn*).)

The Ordinance was approved by the Board of Supervisors (the "Board") in response to a critical shortage of rental housing in the unincorporated areas of the County of Los Angeles. (§ 8.52.020, subd. (A).) The Ordinance regulates excessive rents and provides rules for the termination of a tenancy. (§ 8.52.020, subds. (B), (D).) It sets out strict rules governing any increase in rent which is overseen and, in some cases, enforced by the Department. (§§ 8.52.050-8.52.080, 8.52.145.) Remedies for a violation of the Ordinance include: (1) civil liability for penalties, injunctive, declaratory and other equitable relief, restitution, costs and attorney fees; (2) civil penalties up to $1,000 for each violation; and (3) criminal liability punishable by imprisonment in the county jail for no more than six months or by a fine of not more than $1,000, or by both. (§§ 8.52.160, 8.52.170.) These remedies are not exclusive and do not preclude a tenant from seeking other remedies or penalties as provided by law. (§ 8.52.170, subd. (E).)

Defendants primarily rely on *Rental Housing Assn.*, *supra*, 171 Cal.App.4th 741, in support of their argument that the notice requirement in the Ordinance imposed a substantive prerequisite to plaintiff's cause of action. That case concerned a local rent control ordinance requiring landlords to allege and prove a unit was exempt from the ordinance as part of its case-in-chief. (*Id.* at pp. 754-755.) The ordinance also mandated that those same allegations appear in the notice to quit and specified that "'[f]ailure to make such allegations in the notice

Plaintiffs do not challenge defendants' claim the Ordinance is not preempted by state law. We resolve the issue of preemption in favor of upholding the Ordinance. (See *Rental Housing Assn.*, *supra*, 171 Cal.App.4th at pp. 755-757 [notice requirement properly regulated the substantive grounds for eviction without imposing an inherent delay]; cf. *Birkenfeld*, *supra*, 17 Cal.3d at pp. 150-151 [ordinance requiring certificate of eviction from city before landlord commences unlawful detainer action was invalid to the extent it imposed a procedural barrier between the landlord and the summary proceeding which is fully occupied by state law].)

shall be a defense to any unlawful detainer action.'" (*Id*. at p. 755.) The Court of Appeal upheld the ordinance as a valid regulation on the grounds for eviction. (*Id*. at pp. 755-756.) In rejecting assertions the ordinance impermissibly shifted the burden of proof, because establishing a just cause for eviction and inapplicability of the ordinance are not elements of a landlord's case-in-chief, the court "discern[ed] no logical contradiction between [the] section . . . which requires a landlord to allege and prove a unit is exempt from the ordinance as part of the landlord's case-in-chief, and [the] section . . . which allows the tenant to defend an unlawful detainer action for a landlord's failure to allege and prove required facts." (*Id*. at p. 756.)

In the case *sub judice*, plaintiffs alleged a for-cause termination of tenancy by claiming defendants failed to pay rent in violation of the lease agreement, and defendants were served with a written notice setting the amount of rent to be paid within three days.[4] (§ 8.52.090, subd. (D)(1).) As relevant here, subdivision (B)(4) of section 8.52.090 provides: "When terminating a Tenancy either For Cause or No-Fault, a Landlord must comply with all of the following: . . . [¶] . . . 4. The Landlord has submitted to the Department, within five (5) days after service of the notice of termination on the Tenant, a true and accurate copy of the Landlord's written notice of termination, and proof of such service, signed under penalty of perjury, on the Tenant. The Landlord shall maintain proof of service to the Department as evidence that the Landlord has complied with this Section."

The Ordinance does not specify whether submittal of the notice to the Department is an element of a landlord's prima facie cause of action for unlawful detainer, an affirmative defense, or neither. This contrasts with the ordinance in *Rental Housing Assn.*, which expressly required a landlord to allege and prove the unit is exempt from the rent control ordinance as part of its case-in-chief and declared that a landlord's failure to comply served as a defense to an action for possession. (*Rental Housing Assn.*, *supra*, 171 Cal.App.4th at p. 756.) A review of other provisions of section 8.52.090 and the legislative history of the Ordinance confirms this was not an oversight by the Board.

---

[4]"No Landlord may terminate a Tenancy of an occupied Dwelling Unit, unless the Landlord can demonstrate either a For Cause or No-Fault termination." (§ 8.52.090, subd. (A).)

For example, subdivision (A) of section 8.52.090 provides that "[n]o Landlord may terminate a Tenancy of an occupied Dwelling Unit, *unless the Landlord can demonstrate* either a For Cause or No-Fault termination."[5]  In addition, subdivision (E) of section 8.52.090, which governs no-fault termination of tenancy based on owner-occupancy, provides "[a] landlord *may only* terminate a Tenancy under this Section if the Landlord or Landlord's Family Member who will reside in the Dwelling Unit is similarly situated as the Tenant or Tenant's household members who are being displaced . . ."[6]  (§ 8.52.090(E)(1)(a)(vi), italics added.)

The Board has demonstrated its aptitude to use conditional language when it is intended, and no such language is used in subdivision (B)(4) of section 8.52.090.  When lawmakers use materially different language in statutory provisions addressing the same or related subjects, the normal inference is that the legislative body intended a difference in meaning.  (*American Coatings Assn. v. South Coast Air Quality Management Dist*. (2012) 54 Cal.4th 446, 463.)  In the absence of a prescribed consequence or sanction for the failure to comply with a statute, we presume a mandatory directive is intended to be directory.  (*Board of Education v. Sacramento County Bd. of Education* (2001) 85 Cal.App.4th 1321, 1329.)  Thus, submission of the notice to the Department, while required, was not intended to be an element of a landlord's case-in-chief.

As well, we are not persuaded by defendants' contention that a violation of section 8.52.090, subdivision (B)(4) constitutes an affirmative defense.  The plain language of the Ordinance and its legislative history demonstrate otherwise.

Section 8.52.090, as it existed in 2018, did not require a landlord to serve the notice upon the Department.  The Ordinance did specify, however, "[i]n any action by a landlord to

---

[5]The term "unless" is a subordinate conjunction connecting the dependent clause to the main clause of the sentence, meaning no termination of tenancy may occur unless it falls under the definition of for cause or no-fault, as defined by the Ordinance.  (See generally Black's Law Dict. (5th ed. 1979) p. 1378, col. 1; see also *Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1251 [dictionary definitions are an appropriate tool to determine the ordinary meaning of statutory language].)

[6]A plain reading of the word "only" in this context is that a tenancy may be terminated based on owner-occupancy "for no other purpose" than the circumstances enumerated in the remainder of the Ordinance.  (See Black's Law Dict. (5th ed. 1979) p. 982, col. 2; see also *People ex rel. Hamilton v. City of Santa Barbara* (1962) 205 Cal.App.2d 501, 505 [it is presumed the word "only" is placed in a statute with a purpose].)

8

recover possession of a rental unit, the tenant may raise as an affirmative defense any of the grounds set forth in [section 8.52.090] . . . ." (Former § 8.52.090, subd. (E).)

In November 2019, the Board approved Los Angeles Ordinance No. 2019-0063, which made substantial revisions to Chapter 8.52 of the County Code. This ordinance was intended "to promote long-term stability and certainty for tenants in the rental market" by regulating rents and terminations of tenancy, requiring landlords to register rental property, and creating an administrative hearing process. (Former § 8.52.020, subd. (D), added by L.A. County Ord. No. 2019-0063, § 2.) Notably, the revised ordinance did *not* include the affirmative defense provision from the prior version of section 8.52.090, subdivision (E). (See *ibid*.) Lawmakers are deemed to be aware of laws in effect at the time they enact new laws or amend existing laws. (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 212.)

The current version of the Ordinance, as modified in 2021, sets out various remedies and penalties for any violations of Chapter 8.52, including a tenant's ability to pursue a private right of action. (L.A. County Ord. No. 2021-0040.) Again, the Ordinance does not specify that submission of the notice to the Department is an element of a cause of action to recover possession or that it serves as a complete defense to such an action, whereas other provisions of Chapter 8.52 do exactly that:

"A Tenant may refuse to pay a Rent increase which is in violation of this Chapter. Such refusal to pay the increased amount *shall be a defense* in any action brought to recover possession of a Covered Rental Unit or to collect the Rent increase." (§ 8.52.050, subd. (K), italics added.)

"The act or acts constituting domestic violence, sexual assault, or stalking against the Tenant or a member of the Tenant's household cannot form the substantial basis of a For Cause termination of the Tenancy. The Tenant or a member of the Tenant's household *may raise such facts as an affirmative defense* to a Landlord's termination of the Tenancy." (§ 8.52.090, subd. (D)(3)(d), italics added.)

"A Tenant *may assert retaliation affirmatively or as a defense* to the Landlord's action regardless of the period of time which has elapsed between the Tenant's assertion or exercise of rights under this Chapter and the alleged act of retaliation." (§ 8.52.130, subd. (A)(2), italics added.)

9

The Board has demonstrated it is adept at specifying remedies for violation of the Ordinance, and it simply declined to do so with respect to the notice requirement set out in section 8.52.090, subdivision (B)(4).  It is settled that legislators' omission of language, while using it with other laws enacted as part of the same legislation, suggests such omission was intentional.  (*Seviour-Iloff v. LaPaille* (2022) 80 Cal.App.5th 427, 442, fn. 6.)  It is a cardinal rule of statutory construction that courts cannot read into a law a provision that does not exist and is not shown to be the intent of the lawmakers.  (*Midwest Motor Supply Co. v. Superior Court* (2020) 56 Cal.App.5th 702, 710.)

Our interpretation does not frustrate the Board's intent to prevent excessive rent increases and to provide a mechanism for the Department to monitor and regulate such increases (§ 8.52.020), as this case involves a lease agreement created in June 2021, with no increase in rent before defendants allegedly refused to tender payment for April 2022.  Moreover, defendants are not without a remedy as envisioned by the current version of the Ordinance.  (§§ 8.52.160, 8.52.170; see L.A. County Ord. No. 2021-0040.)  Plaintiffs are entitled to a trial on their claim of right to possession; accordingly, the court appropriately denied summary judgment to defendants.

## DISPOSITION

The petition for writ of mandate is denied, the alternative writ of mandate is discharged, and the stay is lifted.  Plaintiffs shall recover costs on appeal.  (Cal. Rules of Court, rule 8.936(a).)

_____
P. McKay, P. J.

We concur:

_____       _____
Kumar, J.                                    Richardson, J.

10